475 P.2d 268

**ANONYMOUS, Appellant,**

v.

**ANONYMOUS, Appellee.**

**No. 9886.**

Supreme Court of Arizona,
In Division.

Oct. 8, 1970.

Stewart & Pickrell, by Harry A. Stewart, Jr., Phoenix, for appellant.

Lewis & Roca, by Robert A. Jensen, James Moeller, P. Robert Moya, Phoenix, for appellee.

STRUCKMEYER, Vice Chief Justice.

This is the second appeal from a decree in an action for divorce wherein the custody of the minor child and the equity in the community home and furnishings are contested. The parties were married in Illinois on February 8, 1947. Two children were born as the issue of the marriage, a son and a daughter. The adult son is married. He and his wife are presently living with the husband. The daughter, age eight

at the time the divorce was commenced, is now fourteen years old.

The suit for divorce was brought by the husband, who alleged adultery of his wife. She counterclaimed, alleging excesses and cruel treatment. The case was tried in November, 1965, the Honorable Fred J. Hyder presiding. Judgment was entered granting a decree of divorce similar to that approved in Brown v. Brown, 38 Ariz. 459, 300 P. 1007, and custody of the minor daughter was given to the wife together with the furniture and a small equity in the family home and $75.00 a month as child support.

The cause was appealed to the Court of Appeals, which in an opinion in 1968 approved the divorce, but held that the wife's adulterous conduct required the setting aside of the trial court's award of the daughter's custody to her. It said:

> "Our chief concern on this appeal is in the custody award. The reason for our concern is obvious in view of the wife's adultery on numerous occasions with various individuals which was established in the uncontradicted evidence."
>
> \* \* \* \* \* \*
>
> "Loathe as we are to interfere with a trial court's determination in matters of child custody we are here compelled to intercede. The defendant's shameless rampage of adultery, established through admissions and unrepudiated evidence, demonstrates she is morally unfit to have custody. [Citations omitted.]"
>
> \* \* \* \* \* \*
>
> "We are in no position, acting in our appellate capacity, to make a suitable award of custody. The evidence would indicate that the father also is not without blemish. We deem it essential that the trial court promptly conduct further proceedings including inquiry into the fitness of the father and that a determination be made, in keeping with the best interests of the child, placing her in the custody and care of a morally fit and suitable person." 7 Ariz.App. 63, 64–65, 436 P.2d 157–159.

This court has heretofore recognized that marital misconduct leading to a divorce is a relevant factor in determining which of the parents should be awarded the custody of a child. But we have also said that the issue of guilt in causing a divorce and the issue of fitness for the custody of minor children are separate and distinct. A parent may be guilty of an act which is grounds for divorce but which does not necessarily result in the conclusion that the person is wholly unfit to have custody of a child. In Grimditch v. Grimditch, 71 Ariz. 198, 225 P.2d 489, we said:

> "The guilt or innocence of the parents is not controlling and some courts have held that custody may be awarded to one against whom the divorce was decreed, \* \* \* although guilty of *adultery*. [Citations omitted.]" [Emphasis in original.] 71 Ariz. at 206, 225 P.2d at 494.

Today this statement is supported by the overwhelming weight of American state courts. See Anno., 23 A.L.R.3d 6, § 9, for adultery as a pertinent, but not the conclusive, factor.

After remand the trial court scheduled an extensive hearing at which the claims to the custody of the daughter were examined. Both parties took the view that the custody should be awarded to one or the other of her parents rather than to a third person. No suitable third person was proposed or recommended to the court below. Consequently, the court was compelled to a choice between the mother and father, possibly in its opinion the lesser of two evils. Even though the Court of Appeals was of the view that the wife was morally unfit to have custody of the child, the trial judge was of a different opinion and ordered that custody be retained by the wife, and distributed the community assets and ordered child support as it had at the first trial.

The trial court by its finding number six found:

> "The only evidence of unfitness on the part of the mother, in this hearing,

is her uncorroborated admissions of moral [sic] misconduct with other men."

and by its finding number seven:

"Not a relative, friend or neighbor testified to any fact supporting a finding of unfitness against the mother."

In fact, the husband testified:

"Q. Now, isn't it also fair to say, * * *, that you don't know of anyone, as you sit there, that can testify that * * * has, since December of 1965, been an unfit mother?

A Do I know of anyone?

Q Yes, sir.

A No one has told me that.

Q So you don't know of anyone who could indicate that * * * is not a fit mother?

A That I have heard, you mean?

Q Yes, sir.

A No, I don't.

* * * * * *

Q We have agreed religious training is well attended to?

A Right.

Q She is neat and clean when you pick her up, isn't she?

A Has been the last six or eight months pretty good.

Q Wears proper clothes, as far as you can see?

A Last six or eight months, fairly good.

* * * * * *

Q And you have no criticism of the way she is doing in school, do you?

A Well, golly, no, [she] is a smart child.

Q She is getting good grades?

A She seems to be.

* * * * * *

Q She appears to be healthy?

A Yes.

Q Appears that her medical needs are being met?

A I think so.

Q She has never indicated to you she doesn't love her mother?

A No, she has never said anything one way or the other to me about it."

In placing the custody of the daughter with her mother the trial court was motivated in part by the fact that the mother's indiscretions did not occur at home or under such circumstances that the daughter would likely be made aware of them, and that, consequently, the meretricious relationships of the mother did not have a harmful effect upon the child. The wife has had the sole custody of the daughter since at least November 1965, the child then being nine years old and now fourteen years old. It does not appear that it would benefit this child to have her custody changed at this late date. To the contrary, the daughter has indicated that she would run away if placed in the custody of her father. Accordingly, the judgment of the court below as to the custody of the minor child is affirmed.

Our conclusion in regard to the custody leaves but one further question for disposition. It is the appellant's position that the court should award him the community home, paying the wife for her equity, since if he were awarded custody this would allow the daughter to remain in the same neighborhood and go to the same school. Because we have decided that the judgment of the court below is to be affirmed as to the custody of the child, we conclude that the trial judge properly distributed the community assets. We recognize that the community property was not divided exactly equally, but, as we have said:

"It is well founded that the trial court was not bound to make an absolute 50/50 distribution of the community property as long as it does not appear that the trial court's disposition of the community estate is unfair or inequitable. [Citation omitted.]" Armer v. Armer, 105 Ariz. 284, 288, 463 P.2d 818, 822.

No doubt the trial court in awarding the equity in the home to the wife took into

consideration the burden of caring for and educating the daughter. Having allowed only $75.00 a month for the child's support and maintenance, unquestionably it could have believed that the circumstances required that the father also supply a suitable home in which to raise the child.

Judgment of the court below is affirmed.

LOCKWOOD, C. J., and UDALL, J., concur.