NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

MANDY RHOADES, *Petitioner/Appellant,*

*v.*

LOUIS CLYDE RHOADES, *Respondent/Appellee.*

No. 1 CA-CV 25-0641 FC

FILED 04-29-2026

Appeal from the Superior Court in Maricopa County
No. FN2024-050420
The Honorable Julie Ann Mata, Judge

**VACATED IN PART**

COUNSEL

Law Office of Katherine Kraus PLLC, Peoria
By Katherine Kraus, Kimberly A. Staley, Elizabeth S. Langford, and
Shannon M. Lewis
*Counsel for Petitioner/Appellant*

Udall Shumway PLC, Mesa
By Sheri D. Shepard
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

---

**J A C O B S**, Judge:

¶1        Mandy Rhoades ("Wife") appeals a superior court order granting Louis Rhoades' ("Husband") Motion to Alter or Amend Decree of Dissolution, the minute entry memorializing that ruling, and a minute entry denying Wife's Motion for Reconsideration of it.   In those post-decree rulings, the court modified the property division by replacing Wife's award of 50% of the equity in the marital residence with a fixed payment of $57,000.   Because that modification was based on an issue first raised in reply and is unsupported by the record, we vacate that portion of the order.

**FACTS AND PROCEDURAL HISTORY**

**A.        Wife Petitions for Dissolution and the Court Holds a Hearing.**

¶2        Husband and Wife married in April 2011.   Wife petitioned for dissolution in March 2024.   In her petition, Wife requested that Husband refinance the marital residence and pay her $57,000 as her share of the equity.

¶3        The superior court held a hearing on April 1, 2025.   At the outset, the parties entered a Rule 69 agreement resolving several issues, including spousal maintenance, division of retirement accounts, vehicles, and personal property.   The court approved the agreement as knowing, voluntary, and binding as to both parties.   The remaining issues included the "disposition of the residence; equalization of the 2023 tax returns; the gold, silver & copper; division of the liquid assets; affirmation of sole and separate property; reimbursement claims; division of debts; and attorney's fees."

**B.        The Parties Present Competing Positions on Equity in the Marital Residence.**

¶4        At the hearing, Wife acknowledged that her petition requested $57,000 for her interest in the marital residence but testified that amount was not equitable and that she instead sought 50 percent of the

equity, which she believed would be "an equitable division of property in this case." She also testified regarding her financial contributions towards the equity in the property.

**¶5**　　　　On cross-examination, Wife confirmed that Husband had made the mortgage payments since service of the petition and that she had not reimbursed him for half of those payments.

**¶6**　　　　Husband, in contrast, testified that Wife should receive $57,000 as her share of the equity, stating that her position had been $57,000. He also acknowledged that no appraisal had been performed and that he did not know the total equity in the residence. The court heard the parties' competing positions and took the matter under advisement.

### C.　　The Superior Court Enters the Decree Awarding a 50% Equity Division.

**¶7**　　　　In April 2025, the superior court entered a decree of dissolution. The court found that an equal division of community property was appropriate and awarded the marital residence to Husband as his sole and separate property.

**¶8**　　　　The decree expressly acknowledged the parties' competing positions regarding Wife's interest in the property and resolved the dispute by ordering an equal division of the equity:

> **THE COURT FURTHER FINDS** . . . In Wife's Petition she requested $57,000 as property equalization and interest in the marital residence. Husband agreed to that equalization. A formal agreement was not entered with the Court. At trial, Wife requests the residence be sold and the equity split equally. . . .
>
> **THE COURT FURTHER ORDERS**:
>
> • The property . . . shall be refinanced by June 01, 2025 to remove the name of Mandy Rhoades from the debt. Equity is to be divided as follows: Mandy Rhoades 50% Louis Clyde Rhoades 50%.
>
> • If unable to refinance, the property will be placed on the market to be sold. Equity is to be divided as follows: Mandy Rhoades 50% Louis Clyde Rhoades 50%.

¶9 Consistent with those findings, the decree ordered that the residence be refinanced or sold and that the equity be divided equally either way, with each party receiving 50%. Although the court noted Wife's earlier request for $57,000 and Husband's agreement to that amount, it did not adopt that figure and instead ordered a percentage-based division.

### D. Husband Moves to Alter or Amend the Decree of Dissolution.

¶10 Husband filed a Motion to Alter or Amend Decree of Dissolution ("Motion") in May 2025, and the court ordered briefing. Husband's Motion requested modification of the method and timing for removing Wife from the mortgage, including removing the refinancing requirement, extending the deadline, and striking provisions related to sale of the property and appointment of a commissioner since the property had been awarded to Husband, and the court lacked jurisdiction over an out-of-state property. The Motion repeatedly referenced the decree's structure under which Wife would receive "50% of the equity" and did not request modification of that percentage-based division or propose a specific dollar amount in its place.

### E. Wife's Response Opposing Modification and Subsequent Notice of Errata Correcting the $57,000 Reference.

¶11 Wife responded on June 11. In her response, Wife acknowledged that the decree awarded her "50% of the equity" in the residence but raised concerns about how she would actually receive her share if Husband proceeded by mortgage assumption rather than refinance. Because an assumption would not generate cash proceeds, Wife requested, in the alternative, that the court impose additional safeguards, including an order that Husband pay her $57,000 as her interest in the home:

> **WHEREFORE**, Wife respectfully requests this Court:
> A. Decline to remove language relating to 'refinance' from the Decree or, in the alternative, remove same and add language ordering Husband to pay Wife $57,000.00 as and for her interest in the home within 30 days of completion of the mortgage assumption . . .

¶12 On June 19, Wife filed a Notice of Errata correcting that reference, explaining her response had "erroneously state[d] '$57,000' where it should state '50% of the equity in the property,'" and clarifying she was awarded a percentage interest, not a fixed sum.

**F.** **Husband First Requests in Reply that the Court Modify the Decree to Replace Wife's Percentage Interest with a Fixed $57,000 Equity Award; the Court Grants the Request and Denies Wife's Motion for Reconsideration.**

¶13 Husband replied on June 26, requesting for the first time that the court amend the decree to award Wife a fixed sum of $57,000. He stated he "has no objection to $57,000.00 being Wife's interest in the property" and asked the court to "find that Husband owes to Wife the sum of $57,000.00 for her interest in the property."

¶14 On July 16, the superior court granted Husband's motion and ordered him to pay Wife "$57,000 as and for her interest in the property by August 1, 2025," struck the June 1, 2025 deadline, ordered him to remove Wife's name from the mortgage obligation, and removed language ordering the sale of the residence and the appointment of a Special Commissioner. Wife moved for reconsideration on July 22, which the court denied on July 28. Wife timely appealed. We have jurisdiction. Ariz. Const. art. 6 § 9; A.R.S. § 12-2101.

**DISCUSSION**

¶15 We review a superior court's division of community property for an abuse of discretion. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283 ¶ 14 (App. 2019). Although the superior court has broad discretion to allocate community property, its ruling must be supported by the record and consistent with Arizona law. *Meister v. Meister*, 252 Ariz. 391, 396 ¶ 12 (App. 2021). An equitable division does not require strict equality, but it must be fair under the circumstances. *Id.* at 396 ¶ 13. We view the evidence in the light most favorable to affirming the ruling but will not uphold a decision that reflects an abuse of discretion. *Nace v. Nace*, 104 Ariz. 20, 23 (1968).

**I.** **The Superior Court Erred by Granting Husband Relief He Failed to Request in His Motion.**

¶16 Wife argues the superior court erred by granting relief that was not requested in Husband's Motion. Husband responds that the court had discretion to revisit the decree and rely on the $57,000 figure based on the parties' briefing, citing *Robertson v. Petz* for the proposition that "a court may accept an invitation to revisit a judgment when justice requires." --- Ariz. ---, 574 P.3d 232, 240 ¶ 23 (App. 2025).

¶17 We agree with Wife because Husband did not request modification of the decree's equity division in his Motion. He likewise did

not propose replacing Wife's 50% equity award with a fixed amount. Instead, the Motion addressed only the mechanics of removing Wife from the mortgage and striking the sale-related provisions in the decree. The family law rules require that "[m]otions must state with particularity the grounds for granting the motion and the relief or order sought." Ariz. R. Fam. Law P. 35(a)(2). And we have often stated that arguments raised for the first time in reply are waived. *Westin Tucson Hotel Co. v. Dep't of Revenue*, 188 Ariz. 360, 364 (App. 1997) (rejecting arguments raised in a reply to a summary judgment motion because "a claim raised for the first time in a reply is waived"); *State v. Lopez*, 223 Ariz. 238, 239 ¶ 3 (App. 2009) (same). That rule of law is a corollary of the bedrock principle that you need to ask for the relief you want, and state the grounds for the relief you seek, in your motion. Ariz. R. Fam. Law P. 35(a)(2). *See also* Ariz. R. Civ. P. 7.1(a)(1).

**¶18** True, Wife's response suggests the court could award her $57,000 as an alternative if the court removed the refinance language. But a week before Husband filed his reply brief, Wife filed a Notice of Errata explaining that her response had "erroneously state[d] '$57,000' where it should state '50% of the equity in the property,'" and clarifying that she "was awarded 50% of the equity in the property, not any fixed dollar amount." After that correction, Husband, for the first time in his reply, asked the court to amend the decree to award Wife $57,000. But that's not how motion practice works. Husband didn't move for this relief, or state grounds in support of it. Raising it in reply when Wife mentioned it but withdrew the reference in a Notice of Errata before Husband replied short-circuits how motion practice works. *See* Ariz. R. Fam. Law P. 35(a)(2); *Westin Tucson Hotel Co.*, 188 Ariz. at 364; *Lopez*, 223 Ariz. at 239 ¶ 3. It was error to reform the decree on that basis.

**¶19** Husband's argument that *Robertson* justifies the procedure employed in his case is misplaced. There, the court concluded the superior court acted within its discretion to consider a post-decree reimbursement issue because Husband had already "made the fact of the payments a part of the trial," had raised the issue in his pretrial statement, testified to those facts at trial, and "the record d[id] not support the court's order." *Robertson*, 574 P.3d at 240 ¶¶ 24, 26. The posture of this case is entirely different. Here, by contrast, the request to convert the decree's percentage-based award into a fixed sum was not raised in Husband's Motion at all, which contrasts sharply with *Robertson*, where the legal issue giving rise to the modification was raised before trial and was the subject of trial testimony. Under these circumstances, the superior court erred by granting relief that was not requested in Husband's Motion.

## II.    Even If It Had Been Timely Raised, the Court Erred By Granting the Modification.

¶20        Wife argues the court improperly modified a final property division without statutory authority or evidentiary support.  Husband contends the court acted within its discretion to revisit the decree, and that substantial evidence supported the $57,000 figure.  We again agree with Wife.

¶21        Arizona law strictly limits modification of property divisions in dissolution decrees.  *See* A.R.S. §§ 25-317, -325(A).  Once a decree dividing community property becomes final and is not appealed, it is conclusive as to the fairness and equity of the distribution.  *Wine v. Wine*, 14 Ariz. App. 103, 105 (1971).  Property distribution "may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment."  A.R.S. § 25-325(B).  A court may reopen a judgment only upon findings such as "mistake, inadvertence, surprise, or excusable neglect" under Arizona Rule of Family Law Procedure 85. *Matter of Lauder v. Sandoval*, 1 CA-CV 25-0038, 2025 WL 2453312, at *3 ¶ 17 (Ariz. App. Aug. 26, 2025) (mem. decision) (quoting Ariz. R. Civ. P. 60(b)(1)-(6); Ariz. R. Fam. Law P. 85(b)(1)-(6)).

¶22        The court erred by revising the decree because no such findings were made here.  The decree awarded Wife 50% of the equity in the marital residence and did not adopt a fixed value.  The court did not find that this division was mistaken or inequitable, and no party presented newly discovered evidence or any basis to reopen the judgment.  Nevertheless, the superior court later replaced the decree's percentage-based award with a fixed payment of $57,000 without identifying any statutory or rule-based basis for doing so.

¶23        Additionally, the record does not support replacing the percentage-based award with a fixed sum.  Arizona law requires the superior court to determine the value of property at the time of trial when allocating equity interests.  *See Valento v. Valento*, 225 Ariz. 477, 481-82 ¶¶ 13-14 (App. 2010) (explaining the necessity of determining "the value of the property" on the date of the trial to determine the parties' respective interests).  Here, no such valuation occurred.  At trial, the parties disputed their respective financial contributions — Husband testified he paid the full mortgage during the pendency of the case, and Wife acknowledged she had not directly reimbursed him, but neither party presented evidence of the property's fair market value or the amount of equity in it.  Importantly, Husband admitted he was "not sure what the equity would be."

Furthermore, no appraisal was requested, no valuation evidence was introduced, and the court did not order one.

**¶24**        Nor does the record support Husband's contention that substantial evidence established the $57,000 figure.  No appraisal or valuation evidence was presented and Husband acknowledged he did not know the amount of equity in the property.  Without any evidentiary basis for the property's value, the court had no foundation to convert a percentage-based division into a fixed monetary award.  *See Duckstein v. Wolf*, 230 Ariz. 227, 231 ¶ 8 (App. 2012) ("A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion, . . . or 'the record fails to provide substantial evidence to support the trial court's finding.'") (quoting *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50 ¶ 27 (App. 2007)).

## ATTORNEYS' FEES ON APPEAL

**¶25**        Both parties request attorneys' fees and costs on appeal.  In the exercise of our discretion under A.R.S. § 25-324, we deny both requests, but award Wife her costs, subject to her compliance with ARCAP 21.

## CONCLUSION

**¶26**        We vacate the superior court's order modifying the decree to award Wife a fixed payment of $57,000.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR